IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ROXANNE DOREY for                                              PLAINTIFF
A.M.D., a minor child


      v.                         CIVIL NO. 14-5041


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

     Plaintiff, Roxanne Dorey, brings this action on behalf of her minor daughter, A.M.D.,

seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of

the Social Security Administration (Commissioner) denying A.M.D.'s application for child's

supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.    Procedural Background:**

     Linda Dutton protectively filed the application for SSI on her minor granddaughter

A.M.D.'s behalf on April 20, 2011, alleging that A.M.D., who was twelve years of age when the

application was filed, is disabled due to "Ocd, depression, anxiety, odd, [and] pandias." (Tr. 163,

194). An administrative video hearing was held on July 2, 2012, at which A.M.D. and Linda

Dutton, A.M.D.'s custodian, appeared with counsel and testified. (Tr. 86-105).

     The ALJ, in a written decision dated September 4, 2012, found that A.M.D. had the

following severe impairments: obsessive-compulsive disorder; generalized anxiety disorder; and

a mood disorder. (Tr. 67). However, the ALJ further found that as A.M.D. did not have an

impairment or combination of impairments that was medically or functionally equal to a listed impairment, A.M.D. was not disabled.  (Tr. 67).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on November 25, 2013.  (Tr. 1-7). Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed appeal briefs, and this case is before the undersigned pursuant to the consent of the parties.  (Doc. 7; Doc. 12; Doc. 13).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

-2-

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. <u>See</u> 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. <u>See</u> 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. <u>See</u> 20 C.F.R. § 416.924(d). In the present case, the ALJ found that A.M.D.'s claim failed at step three, as A.M.D. did not have an impairment that met or medically or functionally equaled a listed impairment.

The Court finds there is substantial evidence in the record to support the ALJ's determination that A.M.D.'s impairments did not meet or medically equal in severity any listed impairment. <u>See</u> 20 C.F.R. Part 404, Subpt. P, App. 1, Part B. The Court next addresses whether A.M.D.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [A.M.D.] cannot do because of [her] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a(a). Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations[1] in one of the following

---

[1] ((2)Marked limitation -(I)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.... (3)Extreme limitation - (I) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

-3-

"domains:" 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself;  and 6) health and physical well-being.  See 20 C.F.R. § § 416.926(b)(1), 416.926a(d).  The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers.  SSR 09-2P.  In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information."  Lawson v. Astrue, 2009 WL 2143754, at *9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. § 416.9249.

## III.  Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ erred in determining that A.M.D. did not have a marked impairment in interacting and relating to others; 2) the ALJ erred in determining that A.M.D. did not have a marked impairment in attending and completing tasks; and 3) the ALJ erred in determining that Plaintiff did not have a marked impairment in caring for herself.

### A.  Interacting and Relating with Others:

The ALJ found that A.M.D. had no limitation in interacting and relating with others.  In finding no limitation in this domain of functioning, the ALJ noted that A.M.D. was able to communicate her history and that she behaved in a socially acceptable manner during evaluations.  Treatment records revealed that A.M.D. was able to contribute in group therapy,

---

20 C.F.R. § § 416.926a(e)(2) and (3).

-4-

and that the staff at Vista Health did not observe A.M.D. having any significant problems relating to others.  The ALJ further pointed out that during the relevant time period, A.M.D. reported that she went on over-night stays with friends, went swimming, and visited with her friends and family.  The record further revealed that A.M.D. indicated that she was able to use the coping skills learned in therapy to help her when she was feeling anger towards another.  The ALJ pointed out that when A.M.D. was compliant with her treatment plan, she was able to interact appropriately.

The Court acknowledges that Dr. H. Frazier Kennedy opined that A.M.D. had a marked limitation in this domain, while Dr. Susan Manley opined A.M.D. had a less than marked limitation.  The Court finds substantial evidence of record to support the ALJ's finding, but further notes that one domain with marked limitation would not alter the determination in this case.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that A.M.D. had no limitation in interacting and relating with others.

**B.  Attending and Completing Tasks**:

The ALJ found that A.M.D. had a less than marked limitation in attending and completing tasks.  In making this determination, the ALJ noted that with medication and therapy, A.M.D.'s ability to function improved.  The ALJ pointed out that during formal testing A.M.D. was noted to have no difficulty with attending and sustaining concentration, and that she could persist and complete tasks in an acceptable time frame.  Vista Health progress notes repeatedly reported that A.M.D. was able to sit at her desk and do her work as instructed.  The ALJ further

AO72A
(Rev. 8/82)

noted that with medication, A.M.D.'s ability to function in this area improved. A review of the record revealed that in October of 2011, A.M.D. reported that she had been walking with her grandfather, doing artwork with her grandfather, and cooking with her grandmother. A.M.D. further reported that she was completing five hours of home school each day.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that A.M.D. had a less than marked limitation in attending and completing tasks.

### C.  Caring for Yourself:

The ALJ found that A.M.D. had no limitation in caring for herself. In making this determination, the ALJ noted that A.M.D. reported a decrease in her obsessive-compulsive disorder (OCD) symptoms with therapy and medication. In October of 2011, A.M.D.'s OCD symptoms were reported as being a lot better. In May of 2012, progress notes reveal that A.M.D. was "doing well," and that she had decreased anxiety and was counting less. Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that A.M.D. had no limitation in caring for herself during the time period in question.

### D.      Acquiring and Using Information:

The ALJ found that A.M.D. had a less than marked limitation in this domain. In making this determination, the ALJ noted that while A.M.D. was held back in the 6th grade and that she had been home-schooled since September of 2011, the record revealed that A.M.D.'s absenteeism was seen as the main problem with A.M.D.'s academic progress. The ALJ noted A.M.D.'s subjective complaints of having difficulty concentrating and took this into account

AO72A
(Rev. 8/82)

when determining A.M.D. had more than a slight, but less than marked limitations in this area of functioning.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that A.M.D. had a less than marked limitation in acquiring and using information.

**E.       Moving About and Manipulating Objects**:

The ALJ found that A.M.D. had no limitation in moving about and manipulating objects. In making this finding, the ALJ noted that no limitation in this are of functioning was alleged. Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that A.M.D. had  no limitation in moving about and manipulating objects.

**F.       Health and Physical Well-Being**:

The ALJ found that A.M.D.  had a less than marked limitation in health and physical well-being.  The ALJ noted that medication and therapy helped A.M.D. control her mood swings and anger problems.   The ALJ noted that in September of 2011, A.M.D. reported to her counselor that she was comfortable with public school now, and hoped to get back into public school at some point.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that A.M.D. had a less than marked limitation in health and physical well-being.

**IV.     Conclusion:**

Based upon the foregoing, the Court hereby finds, after considering all the relevant evidence in the record, that there is substantial evidence to support the ALJ's findings and conclusions. Accordingly, the Court hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

DATED this 24th day of June, 2015.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-8-